UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
ALEXANDER DOSSOV and OYBEK
DJURAKULOV,

                      Plaintiffs,

          -against-

UNITED STATES OF AMERICA,

                      Defendant.
-----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
25-CV-6745 (NRM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On December 9, 2025, Plaintiffs Alexander Dossov ("Dossov" or "Driver") and Oybek Djurakulov ("Djurakulov" or "Passenger") (collectively, "Plaintiffs") filed the above-captioned complaint against the United States ("Defendant" or the "Government") under the Federal Tort Claims Act. *See generally* Compl., ECF 1. Plaintiffs allege damages arising from a motor vehicle accident that occurred when a United States Postal Service ("USPS") vehicle allegedly rear-ended the car Dossov was driving on August 30, 2024, in Brooklyn, New York. *See generally id.*

Defendant has moved to disqualify Plaintiffs' counsel. *See* Mot. to Disqualify Counsel ("Mot."), ECF 10; Def.'s Mem. in Supp. ("Mem."), ECF 11. On May 19, 2026, the Court held oral argument on the motion. *See* May 19, 2026 ECF Min. Entry & Order; *see also* May 19, 2026 Oral Arg. Hr'g Tr. ("Hr'g Tr."), ECF 15.

For the reasons that follow, the Court denies Defendant's motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The complaint alleges that on August 30, 2024, around 5:30 a.m., Plaintiff Dossov was operating a motor vehicle near the intersection of East 38th Street and Linden Boulevard in Brooklyn, New York. Compl., ECF 1, ¶¶ 22, 23. Plaintiff Djurakulov was a

passenger in the car. *Id.* ¶ 1. A pedestrian "suddenly crossed the street unexpectedly" and Dossov "was required to stop suddenly." *Id.* A vehicle owned by the USPS collided with the rear of Dossov's vehicle, and Plaintiffs sustained injuries. *Id.* ¶¶ 1, 29–30, 36–37.

As noted above, Plaintiffs filed their complaint on December 9, 2025. *See generally id.* On February 11, 2026, counsel for the Government appeared and moved to stay its deadline to respond to the complaint; counsel's letter motion indicated that the parties were attempting to resolve a dispute as to whether Plaintiffs' counsel could continue to represent both Plaintiffs. *See* Notice of Appearance, ECF 5; Mot. to Stay, ECF 6. On February 20, 2026, the parties filed a status report, proposing a briefing schedule on the instant disqualification motion, which the Court entered. *See* Status Report, ECF 7; Feb. 24, 2026 ECF Order (setting briefing schedule); *see also* Feb. 25, 2026 ECF Order (correcting briefing schedule). On May 8, 2026, the parties filed their bundled motion papers as directed by the Court. *See* Mot., ECF 10; Mem., ECF 11; Pls.' Mem. in Opp'n ("Opp'n"), ECF 12; Def.'s Reply in Supp. ("Reply"), ECF 13.

Plaintiffs' opposition included conflict waivers from each Plaintiff, dated February 11, 2026, indicating that each Plaintiff desires representation by the same law firm. *See* Djurakulov Waiver, ECF 12-3; Dossov Waiver, ECF 12-4. Plaintiff Djurakulov's waiver indicated that he understood that "as a passenger [he] may have a theoretical claim against Mr. Dossov, but there would be absolutely no reason to make such a claim, as there is absolutely nothing Mr. Dossov could have done to avoid this accident" and stated that he had fully discussed the issue of joint representation with counsel, wished to proceed with joint representation, and that he did "not wish to proceed with any litigation against Mr. Dossov, whether now or in the future." Djurakulov Waiver, ECF 12-3. Plaintiffs also included a copy of the police report from the accident and photos from the scene of the accident. *See* Police Report, ECF 12-1; Photos, ECF 12-2.

2

The Court scheduled oral argument on Defendant's motion for May 19, 2026. *See* May 12, 2026 ECF Scheduling Order. At oral argument, counsel for Plaintiffs proffered the following additional facts that are material to the Court's analysis below.[1] First, Dossov, as the driver, was not insured for the accident because the parties rented the car from an out-of-state company "that did not have proper insurance." Hr'g Tr., ECF 15, at 18:15–19 (Plaintiffs' counsel representing that the "insurance was disclaimed" and that "[t]here is no insurance to get"); *see* Police Report, ECF 12-1, at ECF pp. 1 (indicating the car was registered to a Pennsylvania entity called "Supra Service Inc" [*sic*]), 2 (leaving the field for insurance information blank). Counsel also represented that "there's no realistic possibility of [Djurakulov] getting any money [from Dossov]." Hr'g Tr., ECF 15, at 29:18–20. Second, Plaintiffs are Uzbek speakers, their counsel employs a paralegal from Uzbekistan, and, when pressed by the Court, counsel indicated that he did not know of any attorneys to whom he would refer Plaintiffs if he were disqualified. *Id.* at 21:3–8, 27:12–18; *see id.* at 21:10–12 (noting that Djurakulov "understands enough English to be able to read" the signed conflict waiver); *see also id.* at 20:21–23 (defense counsel representing that the postal truck driver involved in the accident was unable to communicate with Djurakulov "due to a language barrier"). Third, Plaintiffs' counsel, Jason S. Matuskiewicz, represented that, in his professional opinion, there is no factual basis for Djurakulov to assert a claim against Dossov, and that pressing such a claim could run afoul of Federal Rule of Civil Procedure 11. *Id.* at 19:19–20:7. Finally, it was implied that the two Plaintiffs are friends, as opposed to sharing a familial or some other relationship. *See id.* at 29:18, 29:25–30:1.

---

[1] Courts may consider facts adduced at oral argument. *See Sovulj v. United States*, No. 98-CV-5550 (FB), 2003 WL 21524835, at *1 (E.D.N.Y. July 2, 2003).

At the close of oral argument, the Court invited the parties to file any supplemental authority in support of their positions, in light of the discussion held on the record, and directed Defendant to file an answer by June 9, 2026. *Id.* at 32:8–12, 33:4–10, 35:4–36:18; *see also* May 19, 2026 ECF Min. Entry & Order. On May 26, 2026, Defendant filed a letter of supplemental authority in support of the disqualification motion. Def.'s Letter, ECF 14. On June 9, 2026, Defendant answered the complaint. Answer, ECF 16. Defendant's answer asserts comparative negligence as an affirmative defense. *Id.* at 7–8. On June 15, 2026, Plaintiffs' counsel filed a reply to Defendant's supplemental letter. Pls.' Letter, ECF 17. On June 23, 2026, the Government filed a sur-reply. Sur-Reply, ECF 18.

## DISCUSSION

### I.  Legal Standards

In evaluating a motion to disqualify an attorney, "a district court must balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *GSI Com. Sols., Inc. v. BabyCenter, L.L.C.* ("*GSI*"), 618 F.3d 204, 209 (2d Cir. 2010) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). "Concurrent representation, in which an attorney simultaneously represents 'one existing client in a matter adverse to another existing client,' is 'prima facie improper' and requires the attorney facing disqualification 'to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation.'" *Castillo Abreu v. Alvarez*, No. 21-CV-1641 (RER) (VMS), 2024 WL 5251985, at *2 (E.D.N.Y. Dec. 31, 2024) (quoting *GSI*, 618 F.3d at 209 (emphasis in original) (internal quotation marks omitted)); *see Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976) (same).

While courts "often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules . . . not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132; *see Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 374 (E.D.N.Y. 2010) (observing that the Second Circuit "has repeatedly indicated that the New York Disciplinary Rules are not to be rigidly applied" and may be used "solely for guidance as to the Court's exercise of its discretion" (quotation marks and alteration omitted)). Indeed, the Second Circuit has held that "unless an attorney's conduct tends to taint the underlying trial . . . courts should be quite hesitant to disqualify an attorney." *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (quotation marks omitted); *see Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) ("Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint."). This is because of "the availability of both federal and state comprehensive disciplinary machinery" to handle actual ethical violations, as opposed to the court doing so "in the very litigation in which they surface." *Nyquist*, 590 F.2d at 1246.

The New York Rules of Professional Conduct state that:

A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that: (i) the lawyer's independent professional judgment on behalf of a client will be adversely affected by[] or (ii) the representation of one or more clients otherwise will be materially limited by[] the lawyer's responsibilities to another client, a former client or a third person . . . .

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (2025), Rule 1.7(a).[2] A conflict of interest between current clients may be waived if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

*Id.*, Rule 1.7(b); *see Castillo Abreu*, 2024 WL 5251985, at *3. Rule 1.7(b)(1) requires measuring the purportedly conflicted lawyer's belief according to an objective standard — that is, whether a reasonable lawyer would believe that he could provide competent and diligent representation to both his clients. *Cohen v. Strouch*, No. 10-CV-7828 (DLC), 2011 WL 1143067, at *5 (S.D.N.Y. Mar. 24, 2011) (citing *Paladino v. Skate Safe, Inc.*, 958 N.Y.S.2d 62 (Table), at *3–4 (Sup. Ct. Nassau County 2010) and *Shaikh ex rel. Shaikh v. Waiters*, 710 N.Y.S.2d 873, 875 (Sup. Ct. Nassau County 2000)).

---

[2] Notably, this rule was amended in 2025. Previously, the rule stated:

> [A] lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing *differing interests;* or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (2022), Rule 1.7(a) (emphasis added). The Rules also previously defined "differing interests" as "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." *Id.*, Rule 1.0(f). The New York State Bar Association ("NYSBA"), in proposing this change, explained that the "differing interests" standard was not only outdated, but "would seem to be triggered even by very limited differences in client interests, including purely economic differences." Letter from Domenick Napoletano, President of the NYSBA, to David Nocenti (May 19, 2025), at 3, Ex. 2 to Memorandum from David Nocenti, on behalf of the Administrative Board of Courts, available at https://www.nycourts.gov/LegacyPDFS/rules/comments/pdf/RequestForPublicComment-RulesOfProfessionalConduct-ConflictsOfInterest-061625.pdf [https://perma.cc/88GK-HU63] (last accessed July 7, 2026). The new formulation, the NYSBA indicated, would offer more guidance to lawyers and better conform to "prudent lawyers[']" understanding of conflicts in practice. *Id.*

Because motions for disqualification are "often brought for tactical reasons," the party moving for disqualification bears the burden of showing disqualification is warranted. *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 309 (S.D.N.Y. 2006) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791–92 (2d Cir. 1983)). If the court grants the disqualification motion, the attorney must be disqualified from representing all of the conflicted clients, even if representation of one has ended. *Castillo Abreu*, 2024 WL 5251985, at *2, *3; *see Sidor v. Zuhoski*, 690 N.Y.S.2d 637, 638–39 (App. Div. 2d Dep't 1999). A court's decision on a disqualification motion is reviewed for abuse of discretion. *See GSI*, 618 F.3d at 209 (citing *Glueck*, 653 F.2d at 750).

## II.  Analysis

As a threshold matter, the Court observes that there is an ample body of caselaw that has applied the "'well-established rule' that a lawyer may not concurrently represent a client with interests materially adverse to those of another client 'specifically to concurrent representation of both the driver of an automobile involved in an accident as well as a passenger in the same automobile.'" *Genao de Valdez v. A. Duie Pyle, Inc.*, No. 24-CV-5376 (HG), 2024 WL 4710877, at *1 (E.D.N.Y. Nov. 7, 2024) (quoting *Cohen*, 2011 WL 1143067, at *3). The Court further observes that these cases are, in the main, premised on the principle that, even if there is no current actual conflict between a driver and a passenger, "a conflict arises from the concurrent representation of driver and passenger because there is the *potential* for such a claim." *Cohen*, 2011 WL 1143067, at *5 (emphasis added).

The facts of this case put the tension between disqualification based on a potential claim and a client's right to choose their own counsel into stark relief. Is the mere potential of a claim — no matter how remote — enough to disqualify counsel?

In this case, the answer is no.

7

### A. *GSI*, *Glueck*, and Car Accident Cases

In *GSI*, the case underpinning much of this circuit's precedent on disqualification due to concurrent representation, the Second Circuit made note of the inherent tension between disqualification and a client's right to choose their counsel. The *GSI* court instructed that "courts should generally respect a party's decision to 'waive his right to conflict-free counsel in order to retain the attorney of his choice,'" and observed that this principle "has even greater force in the context of private litigation where the Sixth Amendment does not apply." *GSI*, 618 F.3d at 212 (quoting *United States v. Schwarz*, 283 F.3d 76, 95 (2d Cir. 2002)).[3]

Notwithstanding this teaching, the *GSI* court also observed that:

> Because concurrent representation is "prima facie improper," it is incumbent upon the attorney to "show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." [*Cinema 5*, 528 F.2d at 1387.] We have noted that this is "a burden so heavy that it will rarely be met." *Glueck*, 653 F.2d at 749.

*GSI*, 618 F.3d at 209 (emphasis in original).

The high bar set by this observation appears to animate the practice of disqualifying counsel that has arisen in multiple-plaintiff car accident cases in this circuit. In one such case, the court observed that "[i]n almost all cases, a lawyer may not

---

[3] In *Schwarz*, the Second Circuit found an actual conflict between a criminal defendant and his counsel unwaivable, rendering the defendant's conflict waiver unavailing. Notwithstanding that holding based on the highly specific facts of that case, the *Schwarz* court observed, consistent with a long line of Second Circuit cases, that: "In most cases when a defendant is faced with a situation in which his attorney has an actual or potential conflict of interest, it is possible for him to waive his right to conflict-free counsel in order to retain the attorney of his choice." *United States v. Schwarz*, 283 F.3d 76, 95 (2d Cir. 2002); *see also United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). In *Curcio*, two brothers, co-defendants in a loansharking conspiracy, sought to be represented by the same counsel, who had been their attorney for over a decade; the circuit reversed the district court's disqualification of the lawyer, holding that given a criminal defendant's "right to counsel of his own choosing" under the Sixth Amendment, a defendant may make "a knowing and intelligent election to pursue that right in preference to his right to an attorney of undivided loyalty." *Curcio*, 680 F.2d at 888.

represent both the driver and the passenger of the same vehicle in a lawsuit related to an automobile accident." *Castillo Abreu*, 2024 WL 5251985, at *2 (citing *Genao de Valdez*, 2024 WL 4710877, at *1 and *Cohen*, 2011 WL 1143067, at *3); *see also Bostic v. United States*, No. 22-CV-5058 (DLI) (PK), 2026 WL 146709, at *2 (E.D.N.Y. Jan. 20, 2026) (quoting *GSI*, 618 F.3d at 209).

The above quote from *Glueck*, however — "a burden so heavy that it will rarely be met" — appears with a different gloss in its original formulation. *Glueck*, 653 F.2d at 749. In *Glueck*, the court was discussing "the strict standards of *Cinema 5*," which concerned a situation of "'actual or apparent conflict in loyalties'" in the context of a case that a plaintiff's law firm had brought against a member of an organization also represented by the same firm. *Id.* (quoting *Cinema 5*, 528 F.2d at 1387). The *Glueck* court held that the strict standards of *Cinema 5* should *not* be "inevitably invoked whenever a law firm brings suit against a member of an association that the firm represents" because, "[i]f they were, many lawyers would be needlessly disqualified because the standards . . . impose upon counsel who seeks to avoid disqualification *a burden so heavy that it will rarely be met*." *Id.* (emphasis added). The court further explained that this "burden is properly imposed when a lawyer undertakes to represent two adverse parties, both of which are his clients in the traditional sense." *Id.* Additionally, earlier in its opinion, the *Glueck* court offered some examples of inappropriate, adverse concurrent representation warranting disqualification, including: "when an attorney represents one client in a suit against another client," or when an attorney "might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party." *Id.* at 748. In other words, the "burden so heavy that it will rarely be met" standard from *Glueck*, 653 F.2d at 749, is properly imposed when the parties are genuinely *adverse*, such that the attorney's

9

violation of professional conduct rules "poses a significant risk of trial taint," given "the serious impact of attorney disqualification on the client's right to select counsel of his choice." *Id.* (citing, *inter alia*, *Nyquist*, 590 F.2d at 1246).[4]

Against this backdrop, the *GSI-Glueck-Cinema 5* standard does not lead to the inevitable conclusion that disqualification is appropriate in all, or even almost all, multi-plaintiff car accident cases, particularly if the plaintiffs' interests are only adverse in the abstract.[5]

---

[4] In its original context, the "heavy burden" formulation of *Glueck* was contemplated for situations that fell squarely within the standards of Canon 5 of the ABA Code of Professional Responsibility. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir. 1981) (discussing Canon 5). Canon 5 instructed that: "A lawyer should exercise independent professional judgment on behalf of a client." ABA Model Code of Pro. Resp., Canon 5 (1969). The New York Code of Professional Responsibility, modeled after the ABA Model Code, was replaced by the New York Rules of Professional Conduct in 2009. *See Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 372 n.1 (E.D.N.Y. 2010) (noting that "the case authority interpreting the old canons continues to be probative on issues that are analyzed under the new rules, especially where . . . the new rule generally incorporates the substance of the old canons").

[5] This is the view Defendant urges. *See* Mem., ECF 11; Reply, ECF 13; Def.'s Letter, ECF 14. Specifically, Defendant argues that because "the passenger has the '*ability* to assert claims against [the driver] for [the driver's] alleged negligent operation of the vehicle,'" a plaintiff-passenger and plaintiff-driver's financial interests are necessarily at odds, triggering a conflict for the attorney who is counsel to both. Mem., ECF 11, at 4 (alterations and emphasis in original) (quoting *Dorsainvil v. Parker*, 829 N.Y.S.2d 851, 855 (Sup. Ct. Kings County 2006)). Defendant posits further that even if plaintiff-passenger does not assert such claims, "the plaintiff-passenger lacks independent advice and advocacy on whether or how to pursue such recovery," because counsel cannot ethically advise plaintiff-passenger to take a litigation position adverse to his other client, plaintiff-driver, and vice versa. *Id.* at 4–5 (citing, *inter alia*, *Alcantara v. Mendez*, 756 N.Y.S.2d 90, 92 (App. Div. 2d Dep't 2003); *Castillo Abreu v. Alvarez*, No. 21-CV-1641 (RER) (VMS), 2024 WL 5251985, at *2 (E.D.N.Y. Dec. 31, 2024); *Shaikh ex rel. Shaikh v. Waiters*, 710 N.Y.S.2d 873, 876 (Sup. Ct. Nassau County 2000)). Defendant also contends that Plaintiffs' position — that any recovery from the driver is unavailable because they were rear-ended — is incorrect as a matter of law. *See id.* at 6 (collecting cases holding that "'[n]ot every rear end collision is the exclusive fault of the rearmost driver'" (quoting *Kim v. Metro. Suburban Bus Auth.*, No. 139-07, 2008 WL 904696 (Sup. Ct. N.Y. County Mar. 20, 2008))); *see also* Reply, ECF 13, at 3. Finally, Defendant argues that Plaintiffs' counsel cannot show that his representation is appropriate because the conflict must be analyzed "'based on facts at the time of the client retention,'" which requires, at minimum, that Plaintiffs' counsel obtain a waiver prior to engaging in the representation. Mem., ECF 11, at 3 (quoting *Castillo Abreu*, 2024 WL 5251985, at *4); *see* Reply, ECF 13, at 4, 5. Each of these arguments is unpersuasive given the facts of this case, as discussed herein.

### B. Concurrent Representation

Here, the Court first questions whether this is a case of "[c]oncurrent representation, in which an attorney simultaneously represents 'one existing client *in a matter adverse to another existing client*.'" *Castillo Abreu*, 2024 WL 5251985, at *2 (emphasis added) (quoting *GSI*, 618 F.3d at 209). Actual adverse, concurrent representation would be "prima facie improper." *Id.*; *see Hempstead Video*, 409 F.3d at 133 (observing that "it is 'prima facie improper' for an attorney to simultaneously represent a client and another party with *interests directly adverse to that client*" (emphasis added) (quoting *Cinema 5*, 528 F.2d at 1387)). Given the specific circumstances of this case, however, there is almost no factual basis from which to conclude that counsel's representation of one client will be directly adverse to the other, or that there is a significant risk that the lawyer's professional judgment on behalf of one client will be adversely affected or materially limited by the lawyer's responsibility to another client. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (2025), Rule 1.7(a).

First of all, Plaintiffs' interests in this case seem entirely aligned. They both assert that Driver was forced to stop suddenly to avoid hitting a pedestrian and that Defendant rear-ended the vehicle. Compl., ECF 1, ¶ 1; Djurakulov Waiver, ECF 12-3; Dossov Waiver, ECF 12-4. Passenger has not asserted a crossclaim against Driver, nor has Defendant asserted a counterclaim against Driver. *See generally* Compl., ECF 1; Answer, ECF 16; *see also* Pls.' Letter, ECF 17, at ECF p. 1. Therefore, this is unlike a situation where "the pecuniary interests of the driver conflict[] with those of the passenger" because "the defendant asserted a counterclaim." *Shelby v. Blakes*, 11 N.Y.S.3d 211, 213 (App. Div. 2d Dep't 2015). Indeed, here, because Driver was uninsured at the time of the accident, Passenger's recovery appears to be limited to what he can obtain from Defendant alone; this almost certainly would be true even if

11

Defendant had asserted a counterclaim, because Driver is of limited financial resources and is uninsured.[6] Hr'g Tr., ECF 15, at 9:15–20, 29:19–20 (counsel observing that "there's no realistic possibility of [Djurakulov] getting any money [from Dossov], even if he wanted"); *see id.* at 18:18–19 (discussing the lack of insurance on the rental vehicle). Accordingly, "the representation of" Driver is not "directly adverse to" Passenger. N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (2025), Rule 1.7(a)(1).

Second, based on the Court's review of the record and the oral argument held on this motion, there does not appear to be a "significant risk" that "the lawyer's independent professional judgment" on behalf of Driver "will be adversely affected" or "materially limited by" his representation of Passenger, or vice versa. *Id.*, Rule 1.7(a)(2). Defendant argues that adequately representing a plaintiff-passenger requires counsel "'to evaluate the liability of [plaintiff-driver]' and potentially 'pursue claims against [plaintiff-driver],'" but that counsel cannot do so without implicating his duty of loyalty to the plaintiff-driver. Mem., ECF 11, at 7–9 (alterations in original) (quoting *Castillo Abreu*, 2024 WL 5251985, at *4). It is true that various trial-court level cases hold, in essence, that counsel's professional judgment on behalf of a driver may be limited *ex*

---

[6] Plaintiffs' counsel argues that Passenger would not be able to recover from Driver because Plaintiffs were rear-ended, meaning the Government's negligence is presumed. *See* Opp'n, ECF 12, at 4–5. As all parties note, however, defendants in rear-end accidents may rebut the presumption of negligence and assign liability to the plaintiff-driver under a comparative negligence theory. *See* Mem., ECF 11, at 7–8 (citing, *inter alia*, *Gutierrez v. Reilly*, No. 24-CV-3953 (JAM), 816 F. Supp. 3d 274, 282 (E.D.N.Y. 2026) and *Yi Fu Chen v. Spring Tailor, L.L.C.*, No. 12-CV-0218 (PAE), 2015 WL 3953532, at *6–7, *9 (S.D.N.Y. June 29, 2015)); Opp'n, ECF 12, at 5–6 (citing, *inter alia*, *Staton v. Ilic*, 892 N.Y.S.2d 486, 488 (App. Div. 2d Dep't 2010) and *Cabrera v. Rodriguez*, 900 N.Y.S.2d 29, 30 (App. Div. 1st Dep't 2010)). (Note, too, that *Gutierrez*, which Defendant cites, is a case where both plaintiffs (motorist and passenger) are represented by the same counsel. *See generally Gutierrez*, 816 F. Supp. 3d 274.) Therefore, to the extent that Plaintiffs rely on the presumption of negligence to argue that Passenger and Driver's pecuniary interests are aligned, this argument is immaterial, in view of the fact that Passenger cannot recover from Driver because Driver is of limited financial resources, not because of the likelihood of prevailing on the issue of comparative negligence.

12

*ante* by his representation of a passenger because of the potential for crossclaims, and vice-versa. *See Shaikh*, 710 N.Y.S.2d at 875 (noting that "a passenger will almost always be advised to assert claims against all other drivers, including the passenger's driver" (quotation marks omitted)); *Bostic*, 2026 WL 146709, at *2 (observing that plaintiff-passenger's "failure to bring a cross-claim may have resulted from the conflicted representation"); *see also Ferrara v. Jordache Enters. Inc.*, 819 N.Y.S.2d 421, 422–23 (Sup. Ct. Kings County 2006) (explaining that "[i]t should be anticipated . . . that [cross-]claims against the plaintiff-driver would be made pitting the driver against the passenger").

Here, however, counsel for Plaintiffs represented to the Court that he had no basis to advise Passenger to pursue a crossclaim against Driver, and even went so far as to suggest that doing so could run afoul of Rule 11, which requires attorneys to certify that their "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that their "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2)–(3); Hr'g Tr., ECF 15, at 19:19–20:7. In this case, Plaintiffs agree that Driver stopped suddenly to avoid hitting a pedestrian, and that Defendant then rear-ended them. *See generally* Compl., ECF 1. While, as discussed *supra* note 6, a driver may be found liable in a rear-end crash if he stopped negligently, it does not necessarily follow that, in order to zealously advocate for his client, counsel must advise the passenger to assert a crossclaim against the driver in every car accident suit; indeed, it would be poor advocacy for counsel to advise a plaintiff to assert a claim that, in his professional judgment, has no chance of success. On the other hand, counsel's zealous advocacy for the driver's interests may — and

13

probably should — include assessing the driver's exposure to liability on either a crossclaim or counterclaim. Neither of these inquiries is dependent on "using confidential information about" one client, obtained in the course of counsel's representation of that now potentially adverse client. *Glueck*, 653 F.2d at 748. Indeed, here, counsel could readily make this determination by looking at the police report alone. *See* Hr'g Tr., ECF 15, at 19:22–20:2 ("[I]f anybody came to me with this police report and said I want to sue that guy, I would say you can't."). Each of these inquiries into the *potential* causes of action in a case is consistent with counsel's duty of loyalty to each of his clients, provided that the inquiry does not materialize into the assertion of adverse claims while the dual representation continues (in which case counsel would, of course, need to be disqualified).

In addition, because Driver is uninsured and of limited means, this is not a case where if he "were to share any liability for the accident, complete recovery for" Passenger would require Passenger "to pursue claims against" Driver. *Castillo Abreu*, 2024 WL 5251985, at *4; *see also Bostic*, 2026 WL 146709, at *1 (observing that "passengers generally are advised to assert claims against all drivers of all vehicles involved in an accident, including the driver of the car she was in," or else risk "'nonrecovery in the event that the named defendant is exculpated from fault'" (quoting *Shaikh*, 710 N.Y.S.2d at 876)). Rather, Passenger's ability to recover on any claims arising out of this accident depends entirely on Defendant's liability; in other words, if Defendant is not liable because Driver is found to have caused the crash, Passenger has the same chance of obtaining a recoverable money judgment from Driver as from Defendant — that is, close to nil. *See* Hr'g Tr., ECF 15, at 29:18–20 (counsel representing that "there's no realistic possibility of [Passenger] getting any money [from Driver], even if he wanted"). Of course, Passenger could theoretically pursue a claim against Driver, even

though Driver is uninsured, and vigorously pursue every mechanism available to collect on a potential judgment. But there is no requirement that a plaintiff *must* bring a claim against all possible parties, or, indeed, that he has to sue anyone at all in the aftermath of a car accident. *Cf. Jana Master Fund, Ltd. v. JP Morgan Chase & Co.*, 490 F. Supp. 2d 325, 329 (S.D.N.Y. 2007) (observing that, in the context of the well-pleaded complaint rule for diversity jurisdiction, "the plaintiff is the master of the complaint," and "courts ordinarily have 'no warrant . . . to inquire whether some other person might have been joined'" (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 93 (2005))).

For these reasons, the Court finds that, because Plaintiffs' interests are not "directly adverse" to each other, counsel's representation of both Plaintiffs does not create a concurrent conflict of interest. N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (2025), Rule 1.7(a).

### C. Conflict Waiver

Even assuming *arguendo* that there could be a concurrent representation issue in this case, the Court finds that counsel has shown that "'there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation.'" *GSI*, 618 F.3d at 209 (emphasis in original) (quoting *Cinema 5*, 528 F.2d at 1387).

Federal courts may look to New York Rule 1.7(b) for guidance on whether Plaintiff's counsel has made this showing, but they are not bound by the rule's text. *See Hempstead Video*, 409 F.3d at 132 (observing that courts may use state disciplinary rules as a guide in assessing disqualification motions, but need not be bound by them); *see also Frattarelli Bros.*, 740 F. Supp. 2d at 374 (noting that the rules should not be "rigidly applied" (quotation marks omitted)). As set forth above, Rule 1.7(b) permits conflicts presented by concurrent representation to be waived when:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (2025), Rule 1.7(b).

First, the Court finds that Plaintiffs' counsel's belief "that [he] will be able to provide competent and diligent representation to each affected client" is reasonable. *Id.*, Rule 1.7(b)(1). Defendant argues that, in this context, no reasonable lawyer would believe that he could provide competent and diligent representation to the passenger without asserting a crossclaim against the driver, thereby compromising his duty of loyalty to the driver.[7] Mem., ECF 11, at 11 (citing, *inter alia*, *Cohen*, 2011 WL 1143067, at *5). Here, counsel has assessed the viability of Passenger's asserting a crossclaim against Driver and has found that, in his professional judgment, doing so would be ill-advised.

---

[7] The Court notes that, contrary to defense counsel's conclusory assertion, it is not uncommon for attorneys to bring car accident cases on behalf of multiple plaintiffs in the same vehicle without an adversary ever moving to disqualify the plaintiffs' chosen counsel. *See, e.g.*, *Seaz v. Excellent Bus Serv. Inc.*, No. 21-CV-6967 (TAM), 2025 WL 990247, at *1 (E.D.N.Y. Apr. 2, 2025) (three plaintiffs, including two family members, represented by the same law firm); *Jin Fang v. Dofar*, No. 5:15-cv-1251 (MAD/DEP), 2018 WL 4054096, at *1 (N.D.N.Y. Aug. 24, 2018) (plaintiff driver, mother, suing individually and on behalf of her minor child passenger); *Shamanskaya v. Ma*, No. 07-CV-1974 (RRM), 2009 WL 2230709, at *1 (E.D.N.Y. July 24, 2009) (same counsel representing plaintiffs even where defendants asserted counterclaims against driver); *Gualtieri v. Farina*, 283 F. Supp. 2d 917, 920 (S.D.N.Y. 2003) (married driver and passenger injured in a rear-end accident); *Fischer v. Enter. Rent-A-Car Co.*, Nos. 95-CV-4876, 95-CV-4938 (ILG) (RML), 1996 WL 251426 (E.D.N.Y. Apr. 24, 1996) (at the request of defendants, consolidating cases that plaintiffs, represented by the same attorney, had filed separately and transferring venue); *Staton*, 892 N.Y.S.2d at 488 (motorist and passenger in rear-end accident represented by same counsel); *Florestal v. Henry*, No. 3:22-CV-00237 (VAB), 2022 WL 17082170 (D. Conn. Nov. 18, 2022) (same); *see also* Compl., ECF 1-1, in *Chen v. Singh*, No. 26-CV-1190 (DG) (TAM) (E.D.N.Y. Mar. 2, 2026) (driver and two passengers represented by same counsel in rear-end accident). It is well established that courts may "take judicial notice of documents filed in another court's docket to establish the fact of the litigation and related filings." *Candelaria v. Conopco, Inc.*, No. 21-CV-6760 (NCM) (TAM), 2025 WL 1826454, at *12 (E.D.N.Y. July 2, 2025) (quotation marks omitted).

Hr'g Tr., ECF 15, at 19:19–20:7. On the facts of this case — a rear-end crash where Driver allegedly stopped suddenly to avoid hitting a pedestrian — and against the backdrop of many cases where seemingly reasonable attorneys undertake representation of both driver and passenger, *see supra* note 7, the Court concludes that counsel's determination that he can "provide competent and diligent representation to each affected client" is reasonable and supported by the record. N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (2025), Rule 1.7(b)(1).

Second, the representation contemplated here is not "prohibited by law." *Id.*, Rule 1.7(b)(2). Although there are many cases that support Defendant's argument, this does not mean that representation of two or more plaintiffs from the same car accident is disallowed as a matter of law. On the contrary, as discussed *supra* note 7, many federal car accident cases involve driver and passenger plaintiffs represented by one attorney or law firm. If Defendant's position — that a strict bar on such representation is a well-established, widely accepted rule — were correct, motions for disqualification or disqualification by the court would be *de rigeur*. They are not.

The instant case is distinguishable from the many cited in Defendant's briefing. For example, unlike cases where courts have disqualified attorneys from representing a parent and their minor child, here, both Passenger and Driver are adults capable of entering into an informed waiver in the event of a conflict. *See, e.g.*, *Shaikh*, 710 N.Y.S.2d at 877; *Alcantara v. Mendez*, 756 N.Y.S.2d 90, 92 (App. Div. 2d Dep't 2003); *Sidor*, 690 N.Y.S.2d at 638 (noting that "because a child may properly bring an action against his or her parents, it is improper for an attorney to represent both the parents and the child in an automobile accident action"); *see also Kim v. Metro. Suburban Bus Auth.*, No. 139-07, 2008 WL 904696 (Sup. Ct. N.Y. County Mar. 20, 2008). Additionally, as discussed above, this case is not one where either Defendant or Passenger have asserted a counterclaim

or crossclaim against Driver.[8] *See, e.g., Cohen*, 2011 WL 1143067, at \*3; *Shelby*, 11 N.Y.S.3d at 213; *Peralta v. Matz*, No. 22-CV-2422 (OEM) (CLP), 2024 WL 6935292, at \*7 (E.D.N.Y. Aug. 18, 2024).

To the extent that some of the case law Defendant cites is factually similar,[9] Defendant does not cite to a precedential case holding that concurrent representation of a driver and a passenger is prohibited by law, nor could the Court locate any such binding authority.[10] The Court similarly finds Defendant's citations to the ethics opinions of various bar associations unavailing. *See* Def.'s Letter, ECF 14, at 5. Such opinions "do not have the force of law and this Court is not bound by them." *Bronx*

---

[8] Framed another way, because this case "does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation," the Court finds that counsel has shown that dual representation would be waivable under Rule 1.7(b)(3).

[9] For example, in the *Bostic* case, the court disqualified the counsel of longtime friends who alleged that a USPS truck backed into their vehicle; no crossclaims or counterclaims were asserted, although the government likewise raised comparative negligence as an affirmative defense. *Bostic v. United States*, No. 22-CV-5058 (DLI) (PK), 2026 WL 146709, at \*1 (E.D.N.Y. Jan. 20, 2026). Notwithstanding some factual similarities, the alleged mechanism of the accident in *Bostic* was quite different from that alleged here (a back-into accident versus a rear-end collision). *Id.* Additionally, the *Bostic* opinion, like *Castillo Abreu* and *GSI*, expressly observed that "an attorney may defeat a motion to disqualify based on improper concurrent representation if he can show that 'there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.'" *Id.* at \*2 (quoting *Castillo Abreu*, 2024 WL 5251985, at \*2 (internal quotation marks omitted)); *see GSI*, 618 F.3d at 209.

[10] Defendant relies on *Quinn v. Walsh*, 795 N.Y.S.2d 647 (App. Div. 2d Dep't 2005), for the proposition that "concurrent representation of a driver and passenger violates the New York Code of Professional Responsibility," even in the absence of a counterclaim. Def.'s Letter, ECF 14, at 5. In *Quinn*, a case arising out of an attorney's fee dispute, the Appellate Division, Second Department, affirmed the trial court's holding that counsel "violated [the New York] Code of Professional Responsibility . . . by representing both the driver of the automobile involved in a collision and a passenger in that vehicle." *Quinn*, 795 N.Y.S.2d at 648. But neither the appellate nor the lower court offered any discussion of the facts or analysis to support this holding; accordingly, and in view of the fact that a state appellate decision is not binding on this Court, it is unpersuasive. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 107 (2d Cir. 2013) (finding a party's reliance on a district court case unpersuasive where the court's "conclusion was unsupported by any discussion or analysis").

*Legal Servs. v. Legal Servs. Corp.*, No. 00-CV-3423 (GBD), 2002 WL 1835597, at *3 (S.D.N.Y. Aug. 8, 2002).

The point is this: While many courts have granted disqualification motions when counsel represented the driver and passenger in a motor vehicle accident lawsuit, these decisions do not lead to the ineluctable conclusion that, as a matter of law, such representation is prohibited in every instance. Rather, a motion for disqualification may be defeated if counsel shows "'at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation.'" *Castillo Abreu*, 2024 WL 5251985, at *2 (quoting *GSI*, 618 F.3d at 209 (emphasis in original) (internal quotation marks omitted)). Plaintiffs' counsel has done so here.

Turning to the fourth element of whether a conflict is waivable under Rule 1.7(b) — whether each affected client has given informed consent, confirmed in writing — Plaintiffs' counsel attached to his opposition the parties' signed consent waivers, dated February 11, 2026. *See* Djurakulov Waiver, ECF 12-3; Dossov Waiver, ECF 12-4. Passenger Djurakulov's waiver states that he is aware that he may have a "theoretical claim" against Driver Dossov, but that "there would be absolutely no reason to make such a claim," and further states that Passenger discussed "the potential impact of a joint representation on the attorney-client privilege" with counsel and that he "fully understand[s] the consequences and wish[es] to proceed with the joint representation." Djurakulov Waiver, ECF 12-3. Driver's waiver essentially states the same things. *See* Dossov Waiver, ECF 12-4. Dossov's waiver is notarized, while Djurakulov's is not. *Compare id. with* Djurakulov Waiver, ECF 12-3.

Defendant challenges these waivers on two grounds. First, Defendant questions whether these waivers are appropriate evidence of Plaintiffs' informed consent, given that the waivers are written in English with no certified translation, and Plaintiffs have

limited English proficiency.[11] Reply, ECF 13, at 5 n.4. Second, Defendant argues that the waivers are "legally ineffective" because "New York courts assess conflicted representation at the time the representation began." *Id.* at 5–6 (collecting cases).

As to the language issue, the Court agrees with Defendant that counsel for Plaintiffs should have certified Plaintiffs' understanding of what they were signing, particularly given the importance of *informed* consent in the conflict analysis. *See Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016) (observing, in the context of declarations submitted in support of summary judgment briefing, that "[i]f the declarant himself does not speak and read English . . . the party relying on his English-language declaration must also submit documents sufficient to establish that he understood what he was signing"). That said, there are various "potential response[s] to affidavits" submitted in English by non-English speaking plaintiffs, which may include later submitting certified translations from the native language, or relying on a separate declaration confirming the accuracy of the earlier translation. *Feng v. Hampshire Times*, No. 14-CV-7102 (SHS) (JLC), 2015 WL 1061973, at *3 n.4 (S.D.N.Y. Mar. 11, 2015). That is to say, the Court does not view counsel's failure to submit documentation of the accuracy of the translation provided to Plaintiffs as an incurable deficiency in the waivers.

---

[11] Defendant cites another case involving Plaintiffs' counsel, *Khidirnazarov v. United Parcel Serv. Gen. Servs. Co.*, 250 N.Y.S.3d 926 (Sup. Ct. Kings County 2026), for the proposition that counsel's "failure to provide independent translation [w]as a reason to disregard a purported conflict waiver." Reply, ECF 13, at 5 n.5. In reality, the *Khidirnazarov* court relied on the fact that there *was* evidence in the case that the driver was at fault, but that an updated conflict waiver had not been submitted, as grounds to find the executed waiver deficient. *Khidirnazarov*, 250 N.Y.S.3d at 926. While the court observed that "it behooved counsel to arrange for an independent translation" in the context of assessing the plaintiffs' consent to a purported conflict of interest, this was not a dispositive element in its rationale. *Id.*

As to the timing issue, Defendant cites *Castillo Abreu* for the proposition that in assessing whether conflicted representation may be waived, the waivers' sufficiency "must be evaluated 'based on facts at the time of the client retention,' not 'at the time [that] the motion to disqualify is presented to the court.'" Mem., ECF 11, at 11 (quoting *Castillo Abreu*, 2024 WL 5251985, at *2, *4); *see* Reply, ECF 13, at 5–6. But Defendant takes *Castillo Abreu* out of context: There, the court was explaining that "the proper legal standard for a motion to disqualify" — specifically, whether the representation is concurrent or successive, which is subject to a more forgiving standard — must be evaluated at the time representation begins, so that counsel "may not avoid a disqualifying conflict by dropping the less desirable client like a hot potato." *Castillo Abreu*, 2024 WL 5251985, at *2 (citing, *inter alia*, *Anderson v. Nassau County Dep't of Corrections*, 376 F. Supp. 2d 294, 298 (E.D.N.Y. 2005)) (quotation marks omitted). By contrast, the comments to Rule 1.7 acknowledge that a conflict may arise either before or after the representation is undertaken, and that, if after, the conflict is unwaivable "unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b)." New York R. Pro. Conduct 1.7 (McKinney), cmt. 4; *see id.* cmt. 3, 5 (noting that "[u]nforeseeable developments . . . might create conflicts in the midst of a representation"), 22 (discussing consent to future conflicts), 22A (explaining the attorney's duty to continually assess conflicts). Here, Plaintiffs' counsel obtained his clients' consent to the purported conflict shortly after he was apprised of the potential for a conflict and the waivers indicate the parties' consent to proceeding with the dual representation even in light of the potential conflict. *See* Djurakulov Waiver, ECF 12-3; Dossov Waiver, ECF 12-4.

Based on the foregoing, although the Government's concerns about the waivers have a good-faith basis, the Court does not find that the waivers are "legally

21

ineffective," as Defendant urges. Reply, ECF 13, at 5. The existence of signed waivers in this case cuts in favor of finding that each of the four factors allowing a conflict of interest to be waived has been met. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.00 (2025), Rule 1.7(b)(4). That said, given the weight of decisional law in the New York state and federal courts on this issue, the best course for counsel, as a general rule, would be to ensure that clients understand any potential conflicts and that conflict waivers be secured *prior* to undertaking the representation, and that any such waivers be accompanied by any needed certifications that they were translated for non-English speaking parties.

At the same time, however, under Second Circuit precedent, the standard for whether disqualification is warranted is not whether Plaintiffs' counsel has complied with the New York Rules of Professional Conduct. *See Hempstead Video*, 409 F.3d at 132 (noting that state disciplinary rules offer guidance, but "not every violation of a disciplinary rule will necessarily lead to disqualification"); *Frattarelli Bros.*, 740 F. Supp. 2d at 374 (stating that the New York Rules of Professional Conduct "are not to be rigidly applied" and may be used "solely for guidance as to the Court's exercise of its discretion" (quotation marks omitted)). Additionally, the Court is cognizant of the Second Circuit's guidance that "unless an attorney's conduct tends to taint the underlying trial . . . courts should be quite hesitant to disqualify an attorney." *Nyquist*, 590 F.2d at 1246 (quotation marks omitted); *see Glueck*, 653 F.2d at 748 (recognizing the "serious impact of attorney disqualification on the client's right to select counsel of his choice" and observing that disqualification should ordinarily be limited to situations that pose "a significant risk of trial taint"); *Hempstead Video*, 409 F.3d at 132; *GSI*, 618 F.3d at 209. On the present record, there is no basis to conclude that Plaintiffs' chosen

counsel's actions would "taint the underlying trial," should this case ever proceed to that point. *Nyquist*, 590 F.2d at 1246 (quotation marks omitted).

Certainly, evidence adduced in discovery might compel Defendant to amend its pleadings and assert a counterclaim against Plaintiffs, or Passenger to add a crossclaim against Driver. That would change the analysis, for the reasons discussed above. But balancing "a client's right freely to choose his counsel" against "the need to maintain the highest standards of the profession," the Court does not believe that forcing two uninsured, Uzbek-speaking plaintiffs to take it upon themselves to each find new, separate counsel or else proceed *pro se* upholds "the highest standards" of the legal profession. *GSI*, 618 F.3d at 209 (quotation marks omitted). Rather, disqualification of counsel in such circumstances over a very remote, potential conflict would, in effect, trample plaintiffs' rights in service of an abstract principle.

For the reasons discussed above, the dual representation in this case of two plaintiffs whose interests are aligned does not present a "concurrent representation" conflict of interest. Moreover, even if it did, the Court finds that Plaintiffs' counsel has adequately shown "there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* (emphasis and quotation marks omitted). In addition, because the Court finds that the dual representation will not "tend[] to taint the underlying trial" on the present record, disqualification is not warranted. *Id.* (quotation marks omitted).

## CONCLUSION

In an exercise of the Court's discretion, Defendant's motion to disqualify

Plaintiffs' counsel is denied.

**SO ORDERED.**

Dated:  Brooklyn, New York
      July 8, 2026

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE